SAN DIEGO LAND & TOWN CO. v. JASPER et al.

(Circuit Court, S. D. California. August 22, 1898.)

1. IRRIGATION COMPANIES—REGULATION OF RATES—LIMITATION UPON AUTHORITY.

While individuals and corporations appropriating water under the constitution and laws of the state, and furnishing the same to consumers, do so subject to the right of the state authorities to regulate the rates to be charged, they are within the protection of the guaranty of the fourteenth amendment to the federal constitution that they shall not be deprived of their property without just compensation, and it is the duty of courts to annul rates so established when found to be unreasonable and unjust.

2. SAME—CALIFORNIA STATUTE—POWERS OF SUPERVISORS TO FIX WATER RATES.

A board of supervisors, acting under St. Cal. 1885, p. 95, which authorizes it on petition to fix water rates to be charged to consumers outside of cities and towns, and requires it in doing so to ascertain the value of the distributing system, and the reasonable expenses of its management and operation, and to fix such rates that the net annual receipts and profits to the owners shall be not less than 6 per cent. on the value of the property actually used and useful to the appropriation and furnishing of such waters, has no power to determine as a matter of law that under the contracts between a water company and its consumers the latter are required to pay only such rates as will pay the expense of maintaining and operating the system, without providing for making good the depreciation of the plant, or any profit to the owners, and to fix rates upon that basis.

3. SAME—BASIS FOR DETERMINING RATES.

In determining what is a fair rate to be charged by a company for water, which will allow a fair interest to its owners, the actual present value of its property, and not its cost, is to be taken as the basis.

This is a suit in equity by the San Diego Land & Town Company, as the owner of an irrigation system, for the amendment of rates of charges to its consumers, fixed by the board of supervisors of San Diego county. Heard on exceptions and demurrer to the bill.

Works, Works & Ingle and Works & Lee, for complainant.

A. H. Sweet, for defendants.

ROSS, Circuit Judge. The bill in this suit shows upon its face that the complainant has acquired certain water, water rights, reservoirs,

and a distributing system for furnishing water for domestic, irrigation, and other purposes to consumers within and outside of the city of National City, in the county of San Diego, state of California, together with a franchise for the impounding, sale, disposition, and distribution of the water to such consumers; that the complainant and its predecessors in interest, in procuring the said water and water rights, reservoirs, and distributing system, expended up to October 4, 1897, $1,026,022.79, of which amount there was expended the sum of $65,000 for the enlargement and extension of the system by constructing its "pipe line No. 2"; that all of the expenditures mentioned were reasonably necessary for the purposes stated, and that the whole of the system so constructed is actually used and useful in the appropriation and furnishing of the water; that the annual reasonable expenses of the complainant, including the cost of repairs, replacements by reason of depreciation, management, and operation of the property, have amounted to not less than $20,000, and will amount to that sum, or more, for the current year; that the total receipts that can be derived by the complainant at the rates fixed by the ordinance by the bill sought to be annulled, including all moneys received from the city of National City and its inhabitants under rates fixed by the board of trustees of that city, will not exceed the sum of $25,000 per annum; that the cost of putting in the distributing system within the city of National City, not including the costs incurred outside of the limits of the city, amounted to the sum of $183,753.90; that all of the mains and pipes of the complainant and other parts of its property so used in furnishing water to consumers are perishable property, and require to be replaced at least once in 16 years, and require frequent repairs; that one of the large mains of the complainant so used for supplying water to consumers has so depreciated as to render it necessary to replace a large portion thereof during the present year, at a cost to the complainant of not less than $12,000, and that there are other pipe lines of the complainant that have so depreciated that it will be necessary to replace the same at large expense in the near future, and that the annual depreciation of the entire system will amount to not less than $44,000; that the amount that can be realized from the city of National City and its inhabitants per annum under the rates fixed by the board of trustees of that city, and now in force, has not heretofore, and will not in the near future, exceed the sum of $13,200; that the value of the water, water rights, reservoirs, franchises, and property necessary for the proper operation of its business, and now owned by the complainant, is $1,026,022.79. The bill, after referring to provisions of the constitution and statutes of the state of California respecting the use of all waters now appropriated or that may be hereafter appropriated for irrigation, sale, rental, or distribution, alleges that on the 1st day of September, 1897, the 25 individual defendants, other than the members of the board of supervisors of San Diego county, filed with that board a petition praying it to regulate and prescribe the rates and compensation to be collected by the complainant for water so furnished by it within the county of San Diego outside of its cities and towns; that the hearing of the petition was fixed for the 4th day of October, 1897, and due notice

thereof given; that the petition came on regularly for hearing at the time appointed, and that thereupon the consumers taking water from the complainant's system of waterworks, none of whom were petitioners, filed with the board this protest:

"To the Honorable Board of Supervisors: The present consumers of water for irrigation from the system of the San Diego Land and Town Company who live outside of the city of National City hereby allege and claim that each of them respectively has, by purchase or otherwise, become the owner of a right to the flow and use of so much of the water appropriated by said company for sale, rental, and distribution as is necessary to irrigate his or her respective tracts of land under said company's system; that to each of said tracts of land the said company or its predecessor in title did, by its consent and voluntary act, annex the easement of the right to the flow and use of water from said system for irrigation of such tract in freehold; that each such consumer has fully paid or otherwise satisfied said company and its predecessors for the full price and value of such water right; and that none of such consumers, nor any of the lands of such consumers, are liable to pay to said company any water rate other than their due proportion of the annual reasonable expenses of such company to cover the cost of repairs, management, and operation of the works used and useful to the appropriation and furnishing of such water to such lands. And each and all said consumers protest against the fixing of any rates as to them, to provide or create net annual receipts and profits upon the value of said company's water system so used and useful for the appropriation and furnishing of such water to their respective lands.        Haines & Ward,
                                                    "C. H. Rippey,
                                    "Attorneys for Said Consumers."

The bill alleges that the complainant furnished to the board of supervisors full, complete, and accurate statements and proof of the value and cost of the dams, reservoirs, pipes, pipe lines, and all other property actually used and useful to the appropriation and furnishing of such water belonging to and possessed by the complainant, and also its annual reasonable expenses, including the cost of repairs, management, and operating its works, and also the cost of all extensions, enlargements, and other permanent improvements; that it was shown by such statements and proof that the cost and value of the waterworks and system of the complainant amounted to the sums already stated, and that the annual reasonable expenses, including the cost of repairs, management, and operating the works, and the cost of extensions and enlargements, were as stated; that no proof was made, or evidence given, to the contrary by the petitioners or any one else; that the complainant, upon the conclusion of the evidence, requested the board, in writing, to find and determine the following matters:

"(1) The value of the dam, reservoir, water rights, and distributing system, and all other property actually used by the company, and useful to the appropriation and furnishing of such water. (2) The annual reasonable expenses of the company, including the cost of repairs, management, and operating its works. (3) The cost of any extensions, enlargements, or other permanent improvements of the waterworks of the company since the original construction of its plant. (4) The amount of depreciation of the plant of the company by natural wear from use and the action of the elements, either by way of percentage per annum of such deterioration, or the gross sum thereof for the years since the company commenced to furnish water. (5) The rates for irrigation, necessary to be charged, together with the domestic rates, in order to return to the company net annual receipts and

profits of not less than six per cent. upon the value of its property as found by the board."

It is alleged that the board wholly failed and refused to make the findings or determine the matters set forth in the request, or any or either of them, and that the board did not find or determine the value of the complainant's property actually used and useful in the appropriation and furnishing of the water, or the annual reasonable expenses of the complainant, including the cost of repairs, management, and operating the works; nor did it determine, or attempt to determine, the cost of any extensions, enlargements, or other permanent improvements; nor did it, in fixing the rates, adjust, or attempt to so adjust, the same as that the net annual receipts and profits thereof to the complainant would be not less than 6 per cent. on the value of its waterworks and plant actually used and useful in the appropriation and furnishing of such water to consumers, or any net annual receipt or profits whatever. It is alleged that the board, without finding or determining the matters and things they were required by law to find and determine, and without ascertaining, or attempting to ascertain, whether the rates fixed would return to the complainant 6 per cent. net on the value of its plant, passed and adopted an ordinance, which is set out at large in the bill. It is alleged that not one of the petitioners before the board was a consumer or taker of water under or from the complainant's system, or in any way interested in the price or rates at or for which water is or will be furnished by the complainant; that there is pending in this court a suit brought by Charles D. Lanning, receiver of the San Diego Land & Town Company of Kansas (predecessor in interest of the complainant), against H. M. Osborne et al., wherein the defendants are the same persons who appeared before the board of supervisors, and filed the protest above set forth; that in that action the said receiver alleged that the land and town company, and he, as its receiver, had fixed and established a rate under the water system then owned by that company, and now owned by the complainant, of $7 per acre per annum for irrigation; that the defendants to the suit refused to pay that rate, and were about to bring a multiplicity of suits to prevent the receiver from collecting or enforcing the collection of the $7 rate, and praying that that rate be declared legal, and the defendants to the suit be enjoined from prosecuting suits in the state courts; that the defendants to the suit appeared, and answered the bill of complaint therein, setting up, among other things, that some of the defendants had purchased water rights from the company, that some of them had purchased lands from the company with the water right attached, that others of said defendants had procured a water right to their lands by the voluntary furnishing of water thereto by the company without compensation, and that the company had contracted to furnish and had furnished water to all of the lands at a rate of $3.50 per acre per annum, and alleging that by reason of their purchasing or otherwise procuring of said water rights they were not bound to pay such rates as would return the company any profit, but were only bound to pay such rates as would meet the expense of operation and management of the plant, and that, by reason of the company having fixed and

established an annual rental of $3.50 per acre for irrigation, it was estopped to fix, charge, or collect a higher rate; that such proceedings were had in that suit that upon exceptions to the said answer it was held and decided by this court that the matters set up in said answer were impertinent and insufficient, that any contracts made by the company as alleged in its answer were void, that the company or its receiver had the lawful right to change and re-establish its rates, and that the only remedy of the consumers and defendants was to appeal to the board of supervisors to fix and establish the rates; that no final decree has yet been rendered in that suit, but the defendants thereto avow their intention to appeal from the decree of this court, when entered, and still refuse to pay the rates established by the company. It is alleged that the said consumers, not being willing to petition therefor themselves, and contending that rates different from those first established by the land and town company could not be fixed or established either by the complainant or by the board of supervisors, nevertheless procured the individual defendants to the present suit to file the aforesaid petition to the board of supervisors of San Diego county, in order that the said consumers might insist upon and procure the fixing of rates upon the basis claimed by them of returning to the complainant its expenses of operation and management only, without any net revenue or profit to it; that said consumers did appear in the proceeding before the board of supervisors of San Diego county, and by their protest and otherwise maintain and insist that they were entitled to have the rates so fixed, and in support of their contention, and over the objections of the complainant, they were allowed to and did make proof of their respective purchases of water rights and purchases of lands from the land and town company, and of representations made by that company to the effect that water would be furnished to the land sold by it to some of said consumers for $3.50 per acre per annum for irrigation, and that the board of supervisors, instead of fixing the rates so as to return to the complainant a net profit of not less than 6 per cent. upon the value of its plant, acted upon the said protest and the proof made thereunder, and in pursuance thereof, and in violation of the express provisions of the statute of the state of California, arbitrarily, unjustly, and without right, so fixed the rates by the ordinance set out in the bill as to provide for the expenses of operating and managing the complainant's plant, and so as to return to the complainant no net profit whatever, or to make good or in any way provide for the natural depreciation of the plant. It is alleged that the rates so fixed by the board of supervisors are unreasonable and unjust, and will return to the complainant no revenue whatever; and, if the complainant is compelled to furnish water at the rates so fixed, it can do so only at a continual actual loss to it. To the bill the defendants filed exceptions, and also demurrers, which are now for disposition.

It is declared by the constitution of the state of California that the use of all water now appropriated or that may hereafter be appropriated for sale, rental, or distribution is a public use, and subject to the regulation and control of the state in the manner to be pre-

scribed by law, with certain specific provisions not pertinent to the present question. It is further provided by that constitution that the right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of, and in the manner prescribed by, law. Const. 1879, art. 14, §§ 1, 2. Pursuant to those constitutional provisions, the legislature of the state, in March, 1885, passed an act entitled "An act to regulate and control the sale, rental, and distribution of appropriated water in the state other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the places of use." St. Cal. 1885, p. 95. By the terms of this act the boards of supervisors of the several counties are given power, and it is made their duty, in the manner prescribed by the act, to fix the maximum rates at which any person, company, or corporation may sell, rent, or distribute water appropriated for the purpose. The circumstances and conditions under which such board is authorized and required to do that thing are prescribed by sections 3–6 of the act. The action of the board can only be invoked, in the first instance, by a petition in writing of not less than 25 of the inhabitants who are taxpayers of the county. It was pursuant to that provision of the state statute that the petition of the 25 individual defendants to the present suit was filed with the defendant board of supervisors for the fixing of the rates in question. The statute provides that when such a petition, so signed, has been presented, the board of supervisors, upon giving the notice required, is empowered to examine witnesses; to send for persons, books, and accounts; to ascertain the value of the water system, and the reasonable expenses of its management and operation, including the cost of repairs, together with all other facts, circumstances, and conditions pertinent to the question; and, after such investigation and consideration, to fix and establish the maximum rates at which the water shall be sold, rented, or distributed to the inhabitants of the county outside of any city, town, or other municipality; the board being empowered to establish different rates for water furnished for the different uses, such as mining, irrigation, mechanical, manufacturing, and domestic, but being required to make them equal and uniform as to each class, and being further required to "so adjust them that the net annual receipts and profits thereof to the said persons, associations, and corporations so furnishing such water to such inhabitants shall be not less than six nor more than eighteen per cent. upon the said value of the canals, ditches, flumes, chutes, and all other property actually used and useful to the appropriation and furnishing of such water of each of such persons, companies, associations, and corporations; but in estimating such net receipts and profits, the cost of any extensions, enlargement, or other permanent improvements of such water rights or water works shall not be included as part of the said expenses of management, repair, and operating of such works, but when accomplished may and shall be included in the present cost and cash value of such works." St. 1885, p. 96, § 5. The bill alleges, as has been seen, that the defendant board of supervisors did not find or determine the value of the

complainant's property actually used and useful in the appropriation and furnishing of the water, or the annual reasonable expenses of the complainant, including the cost of repairs, management, and operating the works, nor did it determine or attempt to determine the cost of any extensions, enlargements, or other permanent improvements, nor did it, in fixing the rates complained of, adjust, or attempt to so adjust, them as that the net annual receipts and profits thereof to the complainant would be not less than 6 per cent. on the value of its waterworks and plant actually used and useful in the appropriation and furnishing of such water to consumers, or any net annual receipt or profits whatever; that the board acted upon the protest filed by the consumers and the proof made thereunder, and, in violation of the provisions of the state statute, arbitrarily, unjustly, and without right so fixed the rates by the ordinance complained of as to provide for the expenses of operating and managing the complainant's plant, but so as to return to the complainant no net profit, or to make good, or in any way provide for, the natural depreciation of the plant. The bill alleges that the total receipts that can be derived by the complainant at the rates fixed by the ordinance, including the $13,200 received from the city of National City and its inhabitants under rates fixed by the board of trustees of that city, will not exceed the sum of $25,000 per annum; that is to say, $11,800 from consumers outside of the city of National City. It is alleged that the annual reasonable expenses of the complainant, including the cost of repairs, replacements by reason of depreciation, management, and operation of the property, have amounted to not less than $20,000, and will amount to that sum, or more, for the year to come; that the cost of putting in the distributing system within the city of National City, not including the costs incurred outside of the limits of the city, amounted to the sum of $183,753.90; that the annual depreciation of the entire system amounts to not less than $44,000; and that the value of the entire property is $1,026,022.79.

It undoubtedly devolves upon the complainant to show that the rates established by the ordinance complained of will not yield a fair interest on the value of that portion of its property properly referable to that portion of the county of San Diego outside of the limits of National City, making due allowance for the cost of its maintenance, and the depreciation of the plant by reason of its wear and tear, and having due regard also to the rights of consumers. San Diego Land & Town Co. v. City of National City, 74 Fed. 79, 87; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418. In the present bill it is alleged that under the rates established by the board of trustees of the city of National City the complainant realizes for water furnished to consumers within that city $13,200. The presumption is that those rates are just and reasonable, and there is nothing shown to the contrary. That leaves, according to the averments of the bill, $11,800 as the maximum amount that can be realized by the complainant under the ordinance complained of for water furnished to consumers within the county of San Diego outside of the limits of the city of National City, out of which to pay and make good the annual expense of operating and maintaining the plant by which the water is fur-

nished, its annual depreciation, and a fair interest on the value of the property invested in the undertaking. The first of these items is alleged to be, for the entire system, $20,000, and the second $44,000. As it is averred that but $183,753.90 in value of the entire system (alleged to be of the value of $1,026,022.79) is within the city of National City, these specific averments certainly tend strongly to support the allegations of the bill to the effect that at the rates established by the ordinance complained of the entire revenue that can be collected by the complainant will yield no net income, and will be insufficient to defray the annual cost of operating and maintaining the plant, and make good its annual depreciation by wear and tear. These averments are admitted by the demurrers. They may not be true in fact, but for present purposes are to be accepted as true. So taking them, it cannot be doubted, I think, that the bill makes a good case. Individuals, companies, and corporations who engage in the business of furnishing water to the public under the provisions of the constitution and statutes of the state of California do so, as this court has of late had frequent occasion to observe, subject to the right on the part of the public instrumentalities to fix the rates at which the water shall be so furnished; but with the guaranty afforded by that paramount provision of the fourteenth amendment of the constitution of the United States which, in effect, declares that such rates shall not be so fixed as to deprive the person furnishing the water of his property without just compensation. In considering a similar question in San Diego Land & Town Co. v. City of National City, 74 Fed. 79, 83, this court said:

"As it is firmly established that it is within the scope of judicial power, and a part of judicial duty, to inquire whether rates so established operate to deprive the owner of his property without just compensation, it seems to me that it logically follows that, if the court finds from the evidence produced that they are manifestly unreasonable, it is its duty so to adjudge, and to annul them; for it is plain that if they are manifestly unreasonable they cannot be just. In the solution of that problem many considerations may enter; among them, the amount of money actually invested. But that is by no means, of itself, controlling, even where the property was at the time fairly worth what it cost. If it has since enhanced in value, those who invested their money in it, like others who invest their money in any other kind of property, are justly entitled to the benefit of the increased value. If, on the other hand, the property has decreased in value, it is but right that those who invested their money in it, and took the chances of an increase in value, should bear the burden of the decrease. In my judgment, it is the actual value of the property at the time the rates are to be fixed that should form the basis upon which to compute just rates, having, at the same time, due regard to the rights of the public, and to the cost of maintenance of the plant, and its depreciation by reason of wear and tear. If one has property to sell, it is its present value that is looked to, one element of which may very properly be its cost; but one element only. So, too, if one has property to lease, it is its present value, rather than its cost, upon which the amount of rent is based. And if, as said by Mr. Justice Brewer in Ames v. Railway Co., 64 Fed. 165, 177, the public were seeking to condemn the property in question for a greater public use, if that be possible, its present value, and not its cost, is that which the public would have to pay. It follows, I think, that, where the public undertakes to reduce the rates to be charged for the use of such property, it is its present value, and not its cost, that must be taken as a basis upon which to fix reasonable and just rates; having due regard to the cost of its maintenance, to its de-

preciation by reason of wear and tear, and also to the rights of the public. If, upon such a basis, a fair interest is allowed, no just cause of complaint can exist."

The views thus expressed were not in accord with those of some other courts, but are in accord with those expressed by the supreme court in the late case of Smyth v. Ames, 169 U. S. 466, 546, 18 Sup. Ct. 418, 434, where that court said:

"We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth."

It is, no doubt, a difficult matter to at all times fix rates that will be just both to the consumers, who constitute the public, and to those who furnish the money and perform the service. Perhaps, in such matters, as in some others, absolute justice is unattainable. But certainly, as near an approach to it ought to be made as is practicable. This can only be done by all parties in interest approaching the problem in a spirit of fairness. It is not only right to do so, but, from the low standpoint of policy, it is best. While the presumptions of law are always in favor of the rates established by the regularly-constituted authorities, yet, when they are shown to be manifestly unreasonable, they must always be annulled as unjust, at the suit of the aggrieved party. The duties devolved upon the defendant board of supervisors by the state statute already referred to are plainly pointed out and prescribed. There is not found among them that of considering or deciding legal rights that properly pertain to the courts for decision. Neither of the exceptions or demurrers is, in my opinion, well taken. An order will be entered overruling the exceptions and the demurrers, with leave to the defendants to answer within 20 days.